UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> DAVID PENNINGTON, ) <br> ) <br> Defendant. ) | Criminal Action No. 6:19-CR-074-CHB-7 <br><br> **SEALED MEMORANDUM OPINION AND ORDER ON THE UNITED STATES' MOTION FOR PSYCHIATRIC AND PSYCHOLOGICAL EXAMINATION** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Defendant David Pennington's Notice of Expert Evidence of a Mental Condition under Federal Rule of Criminal Procedure 12.2 (b)(1) [R. 372], and the United States' Motion for Psychiatric and Psychological Examinations of Pennington [R. 377]. Defendant Pennington responded in opposition to the Government's Motion, [R. 379], and the Government filed a reply, [R. 382]. The Court then ordered additional briefing on whether Pennington's anticipated "diminished capacity defense" is admissible. [R. 384] The Government and Pennington filed their additional briefing, [R. 386; R. 389], and the matter is now ripe for resolution. For the reasons explained below, the Court will make a preliminary ruling that Pennington's "diminished capacity evidence" is admissible and will grant the Government's motion for a mental examination, with limitations.

**I. Background**

Defendant Pennington has been indicted on one count of:

> conspir[ing] with others to knowingly and intentionally . . . recruit, entice, harbor, transport, provide, obtain, and maintain by any means a person, knowing [or] in reckless disregard of the fact that force, threats of force, fraud, and coercion would be used to

1

    cause a person to engage in a commercial sex act, in violation of 18 U.S.C. § 1591(a)(l) and (b)(l), all in violation of 18 U.S.C. § 1594(c).

[R. 139] On February 15, 2021, Pennington filed his Notice to the Government that he intends to offer at trial "expert testimony in support of his Diminished Capacity Defense," through two expert witnesses who have examined him and will "testify that at all times relevant in this case, Mr. Pennington had mental disorders which resulted in diminished capacity." [R. 372] The Government responded to this Notice by requesting the Court to order Pennington into the custody of the Attorney General to "conduct[] psychiatric and psychological examinations" under 18 U.S.C. § 4242(a)[1] and Federal Rule of Criminal Procedure 12.2(c). Pennington responded in opposition, asserting, among other arguments, that the Government's request for an examination should not be decided until the Government concedes or the Court rules that Pennington's expert evidence is admissible. [R. 379 pp. 11-12] In its Reply brief, the Government argued that Pennington's "diminished capacity defense" is inadmissible. [R. 382] The Court then ordered additional briefing from both parties on this admissibility issue, [R. 384], and both parties filed briefs, [R. 386; R. 389].

    **II. Evidence of Diminished Capacity**

    Pennington seeks to introduce two experts who will testify that he suffers from "dependent personality disorder," which he frames as a "diminished capacity defense" that potentially negates the *mens rea* element of the charged crime. [R. 389] As an initial matter, the Sixth Circuit has consistently held that evidence of "diminished capacity may be used only to negate the mens rea of a *specific intent* crime," in contrast to a "general intent" crime.[2] *United*

---

[1] The Court notes that 18 U.S.C. § 4242(a) is applicable when a defendant notifies the government that he or she "intends to rely on the defense of insanity." No such notice has been filed here and § 4242(a) is inapplicable.
[2] However, the Sixth Circuit in *Odeh* "rephrased" this rule to state that "evidence of diminished capacity is inadmissible in general intent prosecutions where the diminished capacity relates to what would be a specific intent element." *Odeh*, 815 F.3d at 978. Therefore, a defendant cannot introduce diminished capacity evidence for a

2

*States v. Odeh*, 815 F.3d 968, 977 (6th Cir. 2016) (quoting *United States v. Kimes*, 246 F.3d 800, 806 (6th Cir. 2001)); *United States v. Gonyea*, 140 F.3d 649, 650 (6th Cir. 1998). The Court has explained that a "specific intent crime is one that requires a defendant to do more than knowingly act in violation of the law. The defendant must also act with the purpose of violating the law." *Kimes*, 246 F.3d at 806–07. A general intent crime "requires only that a defendant 'intend to do the act that the law proscribes'" and thus requires only the "knowing commission of an act that the law makes a crime," whereas "[a] specific intent crime requires additional 'bad purpose.'" *Id.*

In this case, Pennington has been charged with conspiracy to commit sex trafficking, under 18 U.S.C. § 1594(c), which the Sixth Circuit has previously held is a specific intent crime. *United States v. Lilley*, No. 15-6415, 2017 WL 7048806 (6th Cir. July 26, 2017) ("[T]he crimes charged against [defendant] are specific intent crimes: . . . conspiracy to commit sex trafficking of children" under § 1594(c) (citing *United States v. Bailey*, 444 U.S. 394, 405 (1980)). Both parties agree that *Lilley* applies here. Further, conspiracy in general has long been viewed as a specific intent crime. *Ocasio v. United States*, 136 S. Ct. 1423 (2016) ("A defendant must merely reach an agreement with the 'specific intent that the underlying crime be committed' by some member of the conspiracy"); *United States v. Brown*, 332 F.3d 363, 372 (6th Cir. 2003) ("Specific intent to join is an essential element of the crime of conspiracy."); *United States v. Morgan*, 385 F.3d 196, 206 (2d Cir. 2004) ("Conspiracy is a specific intent crime."). The same is true in the context of § 1594(c), under which Pennington is charged. *United States v. Hazley*, 812 F. App'x 376, 379 (7th Cir. 2020) ("To prove this charge [under § 1594(c)], the government had to show that a plan to traffic a minor existed and that [defendant] joined it *with an intent* to help

---

general intent crime that only negates "a potential specific intent element," such as "the defendants' purpose in committing the crime." *Id.* As explained elsewhere in this Order, because the Court finds that the charged crime is a specific intent crime, this distinction from *Odeh* is inapplicable.

3

carry it out.") (emphasis added). Therefore, the Court finds that Pennington has been charged with a specific intent crime and that "diminished capacity" evidence may be used to negate the *mens rea* element of the crime.

Courts have carefully scrutinized psychological and psychiatric evidence that a defendant seeks to introduce under a "diminished capacity defense" to ensure that the evidence does in fact potentially negate the *mens rea* of the charged crime. This is so because Congress abolished certain forms of the "diminished capacity defense" in the Insanity Defense Reform Act of 1984 (IDRA), 18 U.S.C. § 17. Several circuit courts, including the Sixth Circuit, have held that the IDRA abolished the *affirmative defense* of "diminished capacity" that excuses the defendant from responsibility for his or her acts, but the IDRA does not bar evidence of "mental disease or defect" that negates the *mens rea* of a specific intent crime. *Odeh*, 815 F.3d at 981 ("[B]ecause the defendant offered the evidence only to negate his mens rea, not as an affirmative defense, we held that the IDRA did not exclude that evidence."); *United States v. Childress*, 58 F.3d 693, 728 (D.C. Cir. 1995) ("Several courts have held that the admissibility of mental condition evidence survives the enactment of [IDRA] where . . . the evidence is admitted not as an affirmative defense to excuse the defendant from responsibility for his acts, but to negate specific intent."). To monitor this boundary and ensure that a defendant's mental capacity evidence does not "slide into wider usage that opens up the jury to theories of defense more akin to justification," district courts must "examine such psychiatric evidence carefully to ascertain whether it would, if believed, 'support a legally acceptable theory of lack of mens rea.'" *United States v. Cameron*, 907 F.2d 1051, 1067 (11th Cir. 1990) (quoting *United States v. Pohlot*, 827 F.2d 889, 905 (3d Cir. 1987)). Therefore, "[i]n deciding whether to permit expert testimony, courts focus on the

4

link or relationship between the specific psychiatric evidence offered and the *mens rea* at issue in the case." *United States v. Wall*, 593 F. App'x 128, 131 (3d Cir. 2014).

For example, in *United States v. Staggs*, 553 F.2d 1073 (7th Cir. 1977)[3] the defendant was charged with threatening to shoot a police officer. *Id.* The Seventh Circuit explained that the prosecution had to prove that the defendant "subjectively intended to put [the officer] in apprehension of bodily harm." *Id.* Because an expert's "testimony that the defendant was a person more likely to want to harm himself than to think about directing his aggressions toward others" due to a mental condition, and this evidence "made more probable the truth of defendant's assertion that he harbored no criminal intent during his encounter with [the officer]," such evidence was admissible. *Id.* Simply put, the psychological evidence could help the jury determine the defendant's intent and could potentially negate the *mens rea* element of the offense. *Id.*; *Cameron*, 907 F.2d at 1067. Similarly, the Court must now determine if Pennington's proffered mental condition and expert testimony could possibly negate the requisite intent of the charged crime.

The Government argues that this question is already answered in *Lilley*. The defendant in *Lilley* was found guilty of various charges involving the sex trafficking of children, possession and distribution of child pornography, and one count of conspiracy to commit sex trafficking of children in violation of 18 U.S.C. §§ 1591(a)(1) and 1594(c). *Lilley*, 2017 WL 7048806 at *1. During trial, the defendant's experts testified that he had a wide variety of mental and physical disabilities, including (most relevant here) dependent personality disorder. *Id.* at *4. But the

---

[3] *Staggs* was overruled on other grounds by *United States v. Ricketts*, 146 F.3d 492, 497 (7th Cir.1998) (explaining that the Seventh Circuit no longer follows its conclusion in *Staggs* that 18 U.S.C. § 111 is a general intent crime). However, several circuit courts have continued to cite to *Staggs* as a prime example of an appropriate use of psychiatric evidence to negate the *mens rea* element of a charged offense. *See Pohlot*, 827 F.2d at 897, *United States v. Worrell*, 313 F.3d 867, 873 (4th Cir. 2002); *Cameron*, 907 F.2d at 1067.

district court denied the defendant's request for a jury instruction on diminished capacity because the court believed the defendant had been charged with "general intent" crimes. *Id.* On appeal, the Sixth Circuit held that, although the district court was mistaken regarding the general intent versus specific intent question (all but one of the charged crimes were specific intent crimes), the defendant was still "not entitled to a diminished capacity jury instruction because the record [did] not support that defense." *Id.* at *4. "[T]he cognitive impairments identified by [the expert] . . . [did] not potentially negate the *mens rea* for any of the crimes charged, regardless of whether they require knowledge or intent." *Id.* at *5. Therefore, the district court did not err in refusing to give the instruction. *Id.*

Here, the Government argues that *Lilley* holds that evidence of a "dependent personality disorder" cannot negate the *mens rea* element of conspiracy to commit sex trafficking. [R. 386 pp. 4-6] The Court does not read *Lilley* to create such a rule. The Sixth Circuit was clear that "the record evidence" in that particular case failed to negate the *mens rea*. *Id.* at *5 ("[T]he record evidence of cognitive impairments goes towards negating [the defendant's] ability to complete the relevant *actus reus*, not the *mens rea* of any of the charged crimes."); *Id.* at *5 n.2 ("[W]e find that the record evidence failed to provide a basis for a diminished capacity instruction."). Therefore, the Court does not agree with the Government's suggestion that "dependent personality disorder" simply cannot negate the *mens rea* element of the relevant offense, under any circumstances. *See United States v. Sebresos*, 972 F.2d 1347 (9th Cir. 1992) (reversing lower court because expert testimony on defendant's dependent personality disorder could show an "inability to formulate the requisite specific intent" and "was critical to [defendant's] ability to present a defense."); *United States v. Mizell*, 38 F.3d 570, 1994 WL 574729 (5th Cir. 1994) (table) (holding that expert's testimony on dependent personality disorder "was probative of the

6

issue of whether [defendant] possessed the requisite actus reus or mens rea to be convicted of the robbery and conspiracy charges" and "was highly probative and an important cornerstone of [defendant's] defense."). Therefore, the Court finds that it is, at a minimum, possible for an expert's testimony regarding dependent personality disorder to negate the *mens rea* element of a specific intent crime.

The Court must then determine whether Pennington's experts' testimony and evidence of his disorder, if believed, could "support a legally acceptable theory of lack of *mens rea*." *Cameron*, 907 F.2d at 1067. As already explained, Pennington is charged with conspiracy to engage in sex trafficking in violation of 18 U.S.C. § 1591. A "fundamental characteristic of a conspiracy is a joint commitment to an 'endeavor which, if completed, would satisfy all of the elements of [the underlying substantive] criminal offense.'" *Ocasio*, 136 S. Ct. at 1429 (quoting *Salinas v. United States*, 522 U.S. 52, 65 (1997)) Generally, conspirators must "pursue the same criminal objective," but "a conspirator [need] not agree to commit or facilitate each and every part of the substantive offense" to be part of the conspiracy. *Id.* (quoting *Salinas*, 522 U.S. at 63). Rather, a "defendant must merely reach an agreement with the 'specific intent that the underlying crime *be committed*' by some member of the conspiracy." *Id.* Therefore, the Government must prove that Pennington reached an agreement with the specific intent that a violation of § 1591(a)(l) (sex trafficking by force, fraud, or coercion) be committed.

Section 1591(a) requires either a "knowing" or "reckless disregard" of the fact that force, threats of force, fraud, or coercion will be used to cause a victim to engage in a "commercial sex act." A "'commercial sex act' means any sex act, on account of which anything of value is given to or received by any person." § 1591(e)(3). Pennington seemingly concedes that he engaged in a "commercial sex act" with at least some of the victims. [R. 389 p. 3 (acknowledging

7

communications with "a person with whom Pennington had sexual relations in exchange for money"); p. 8 ("Pennington does not deny having interactions with women identified by the United States."); p. 9 (noting Pennington accepted an "offer of sex in exchange for money")]. Additionally, he seemed to acknowledge this when he was examined by his experts. [R. 386-1 pp. 3, 4 ("Mr. Pennington was aware of the prostitution but never saw exchange of drugs.")]. Thus, Pennington's argument is that he lacked the specific intent for the "sex in exchange for money" to occur by *force, fraud, or coercion*. According to Pennington, evidence of his dependent personality disorder makes it more probable that he lacked this specific intent. Because of his disorder, he perceived his "relationships" with the victims as "meaningful," romantic, and uncoerced. [R. 389] Such evidence could help the jury in determining whether he had the intent to join a conspiracy wherein the criminal objective involved either a knowing or reckless disregard[4] that force, fraud, or coercion would be used to cause the victims to engage in a commercial sex act.

In this sense and at this preliminary juncture,[5] his expert evidence on his "diminished capacity" is admissible because it is "potentially material as to whether [Pennington] entertained the specific intent to further the purposes of the conspiracy" and "the evidence might help the jury to assess whether, or to what degree, it could infer the requisite specific intent from [Pennington's] commission of the charged acts." *Childress*, 58 F.3d at 726. Therefore, the Court

---

[4] To "recklessly disregard" the fact that force, fraud, or coercion would be used is to be aware or conscious of facts that create a risk that force, fraud, or coercion would be used but then disregard or ignore that information. *United States v. Carson*, 870 F.3d 584, 603 (7th Cir. 2017) (explaining "reckless disregard' in this statute requires . . . an awareness of facts and circumstances that give rise to a risk of a Section 1591 violation. . .") (citing *United States v. Jackson*, 622 F. App'x 526, 528 (6th Cir. 2015)); *United States v. Roy*, 630 F. App'x 169, 171 (4th Cir. 2015) ("[A] defendant can agree to traffic a victim when he *has reason to believe* that she will be coerced into prostitution, but recklessly disregards this danger."); *United States v. Pina-Suarez*, 280 F. App'x 813, 816 (11th Cir. 2008) (explaining "reckless disregard" element in other context is "to be aware of, but consciously and carelessly ignore, facts and circumstances clearly indicating" an element of the offense); *United States v. O'Neal*, 742 F. App'x 836, 842–43 (5th Cir. 2018) ("[T]he common definition of reckless disregard is "[c]onscious indifference to the consequences of an act." (quoting *Black's Law Dictionary* (10th ed. 2014)).
[5] "[*I*]*n limine* rulings are not binding on the trial judge, and the judge may always change [her] mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000).

finds that Pennington's "diminished capacity evidence" could potentially support a legally acceptable theory of lack of *mens rea*, it is relevant, and admissible.

### III. Court-Ordered Mental Examination

Under Federal Rule of Criminal Procedure 12.2(b), "[i]f a defendant intends to introduce expert evidence relating to a mental disease or defect or any other mental condition of the defendant bearing on . . . the issue of guilt" then the defendant must provide notice to the Government. After such notice, "the court *may*, upon the government's motion, order the defendant to be examined under procedures ordered by the court." Fed. R. Crim. P. 12.2(c)(1)(B) (emphasis added).[6]

Pennington filed a notice under Rule 12.2(b), [R. 372], and the Government responded with a request that he be committed "to the custody of the Attorney General for the purpose of conducting psychiatric and psychological examinations." [R. 377] Pennington opposes this requested custodial mental exam. [R. 379] For the reasons explained below, the Court will grant the Government a limited, non-custodial mental exam of Pennington.

In *United States v. Davis*, 93 F.3d 1286 (6th Cir. 1996) the Sixth Circuit provided some guidance for when a court should exercise its discretionary authority to order a government-requested examination under Rule 12.2(c)(1)(B).[7] The Court explained that the decision "requires a case by case analysis to determine whether a psychiatric or psychological

---

[6] This discretionary language is in contrast to when a defendant provides notice of intent to assert a defense of insanity—then the court "must" order the defendant to be examined under 18 U.S.C. § 4242. Fed. R. Crim. P. 12.2(c)(1)(B).

[7] *Davis* also held that Rule 12.2 and 18 U.S.C. § 4242 do not give a district court the authority to order a custodial mental examination after a defendant notices an intent to introduce evidence of diminished capacity. At the same time, the Court held that district courts retain the "inherent authority to order an examination of the defendant, provided the examination is both reasonable and non-custodial." *Davis*, 93 F.3d at 1295. Following *Davis*, Rule 12.2 was amended in 2002 to incorporate this inherent authority into the rule. Fed. R. Crim. P. 12.2.

examination of the defendant will be necessary for the government fairly to rebut the defendant's expert evidence." *Davis*, 93 F.3d at 1293. In any case, a court-ordered examination must be "reasonable and non-custodial." *Id.* at 1295. Although Rule 12.2 was amended after *Davis*, at least one court has held that "the amendments do not alter the holding in *Davis*," but instead "codified the *Davis* holding that an outpatient examination could be ordered when a defendant raises a diminished capacity defense." *United States v. Rinaldi*, 351 F.3d 285, 289 (7th Cir. 2003). Because "the rule did not address the in-custody examination[,] [this] suggests that the new rule left the prohibition on in-custody evaluations intact." *Id.* Accordingly, the Government will only be granted an outpatient, non-custodial examination.

The Court finds that a limited mental examination of Pennington is necessary in this case. As the Supreme Court explained in *Kansas v. Cheever*, 571 U.S. 87 (2013):

> [W]here a defense expert who has examined the defendant testifies that the defendant lacked the requisite mental state to commit an offense, the prosecution may present psychiatric evidence in rebuttal. Any other rule would undermine the adversarial process, allowing a defendant to provide the jury, through an expert operating as proxy, with a one-sided and potentially inaccurate view of his mental state at the time of the alleged crime."

*Cheever*, 571 U.S. at 94. Because Pennington intends to present expert testimony regarding his mental state, the Government has a right to rebut this evidence and its "only effective means of challenging" the defense experts' evidence is through "testimony from an expert who has also examined him." *Id.*; *see also United States v. McMahan*, 129 F. App'x 924, 930 (6th Cir. 2005) (explaining that where the defendant raised "diminished capacity" as part of a defense, "the government was entitled to rebut [the defense]" and the court-order "psychological examination was appropriate."); *Schneider v. Lynaugh*, 835 F.2d 570, 576 (5th Cir. 1988) (explaining that the "most effective and in most instances the only means of rebuttal" is "other psychological testimony.").

As the advisory comments to the 2002 amendment explain, the rule "leaves to the court the determination of what procedures should be used for a court-ordered examination on the defendant's mental condition." Fed. R. Crim. P. 12.2 advisory committee's note to 2002 amendment. The Court may "specify the procedures to be used" and "may certainly be informed by other provisions, which address hearings on a defendant's mental condition." *Id.*

Here, Pennington requests several limitations on the examination. First, Pennington requests that the expert be designated by the Court rather than selected by the Government. The Court declines this request. Just as Pennington selected his own experts to examine him and to potentially testify at trial, now the Government may select its own experts to prepare for rebuttal. Moreover, Pennington points to no caselaw that suggests a court-appointed expert is required nor appropriate in this case. *See, e.g.*, *United States v. Campbell*, 675 F.2d 815, 820 (6th Cir. 1982) (noting the penalty under Rule 12.2 when a defendant refuses to be examined "by a government chosen psychiatrist"); *Savino v. Murray*, 82 F.3d 593, 604 (4th Cir. 1996) ("When a defendant asserts a mental status defense and introduces psychiatric testimony in support of that defense, he may . . . be required to submit to an evaluation conducted by the prosecution's own expert."); *United States v. Baisden*, 886 F. Supp. 2d 1088, 1092 (N.D. Iowa 2012) ("Fairness dictates that the Government be permitted to address that evidence by arranging for its own psychiatric evaluation of defendant.").[8]

---

[8] District courts around the country have repeatedly permitted the prosecution to select its own expert to conduct an examination under Rule 12.2 *See United States v. Parks*, No. CR 3:17MJ-00396-DW, 2018 WL 2090821, at *5 (W.D. Ky. May 4, 2018) (allowing an "expert of the Government's choosing" to examine defendant who raised insanity defense); *United States v. Merriweather*, No. 2:07-CR-00243-RDP, 2014 WL 637051, at *3 (N.D. Ala. Feb. 18, 2014) (rejecting argument that the expert "must be a neutral court expert and not an expert selected by the Government"); *United States v. Northington*, No. CRIM.A. 07-550-05, 2012 WL 2873360, at *3 (E.D. Pa. July 12, 2012) (interpreting Rule 12.2(c)(1)(B) to allow for an "an expert selected by the Government."); *United States v. Fell*, 372 F. Supp. 2d 753, 761 (D. Vt. 2005) ("As a general matter, the government should be able to select its own expert free from what could be unreasonable second-guessing by the defense or the Court."); *United States v.*

Second, Pennington requests a few procedures that would "wall off" the prosecution from the expert's reports up until the defense experts are called at trial. Specifically, Pennington requests that the Government's expert's report be shared only with defense counsel and then filed under seal and the prosecutor be ordered not to communicate with the expert until the defense experts testify. A similar procedure is outlined in Rule 12.2 but is only used in capital cases to seal an expert's report that will be used during the punishment phase.[9] The Court declines Pennington's request for a slightly modified version of these protections. First, this is not a death penalty case. Rule 12.2(c)(2) is clear that such procedures apply to examinations "conducted *solely*" after notice of a mental condition bearing on the issue of punishment in a capital case. As already noted, Pennington has provided notice for a mental condition bearing on the issue of guilt, not the issue of punishment in a capital case. The protections in (c)(2) do not apply. Second, Pennington does not cite to any cases where such limits were imposed in a non-capital case involving expert evidence on a mental condition bearing on the issue of guilt.[10] Rather, subsection (c)(4) of the Rule provides all the necessary protection:

> No statement made by a defendant in the course of any examination conducted under this rule (whether conducted with or without the defendant's consent), no testimony by the expert based on the statement, and no other fruits of the statement may be admitted into evidence against the defendant in any criminal proceeding except on an issue regarding mental condition on which the defendant [has introduced evidence of a mental condition bearing on the issue of guilt].

---

*Minerd*, 197 F. Supp. 2d 272, 277 (W.D. Pa. 2002) (ordering the defendant to be examined by an expert "selected by the government.").

[9] When a defendant gives notice under Rule 12.2(b)(2) of an intent to introduce expert evidence on a mental condition "bearing on . . . the issue of punishment in a capital case," and the court orders a mental examination under subsection (c)(1)(B), the rule requires that the expert's "results and reports" be sealed and not disclosed to either party "unless the defendant is found guilty of one or more capital crimes and the defendant confirms an intent to offer during sentencing proceedings expert evidence on mental condition." Fed. R. Cr. P. 12.2(c)(2).

[10] Pennington cites to a few cases that do not support his specific request. *United States v. Leonard*, 609 F.2d 1163 (5th Cir. 1980) held that the prosecution cannot use a defendant's statements taken from a compelled psychiatric examination for impeachment purposes. *United States v. Curtis*, 328 F.3d 141 (4th Cir. 2003) held the government could introduce its own experts' testimony to rebut the defendant's experts who testified in support of his "mental status defense."

12

Fed. R. Crim. P. 12.2(c)(4). *United States v. Karake*, No. CRIM.A. 02-0256(ESH), 2006 WL 623676, at *1 (D.D.C. Mar. 6, 2006) (explaining that Rule 12.2(c)(4) sufficiently "minimizes the risk of improper use of the information by the government.").

"Noticeably absent from the rule is any requirement that the government be denied access to the results of the examination until after the defendant actually introduces testimony regarding his mental condition." *United States v. Hall*, 152 F.3d 381, 399 (5th Cir. 1998).[11] The Court will not impose such a requirement now. Moreover, the Government must be permitted to prepare an effective rebuttal of the expected expert evidence at trial. Withholding the Government's own expert's reports up until the moment the defense experts take the stand would deprive the Government the necessary time to prepare and may result in unnecessary delay. *See, e.g.*, *United States v. Taveras*, 233 F.R.D. 318, 322 (E.D.N.Y. 2006) (explaining that "fundamental fairness" requires the government have access to the expert reports to be used in rebuttal before trial); *Maldonado v. Superior Ct.*, 274 P.3d 1110, 1130 (Cal. 2012) (analyzing Rule 12.2 and concluding that the prosecution should have "full pretrial access to the results of mental examinations by prosecution experts conducted" for the purpose of rebutting "a mental-state defense . . . on the issue of guilt.").

Pennington argues that these protections are necessary to avoid the need for a "*Kastigar* hearing".[12] [R. 379 pp. 9-10] But again, Pennington does not cite to (and the Court cannot find) any cases that suggest a "*Kastigar* hearing" would be required when an examination is ordered

---

[11] Abrogated on other grounds by *United States v. Martinez-Salazar*, 528 U.S. 304 (2000).

[12] In *Kastigar v. United States*, 406 U.S. 441 (1972) the Supreme Court held that when a witness is compelled to give incriminating testimony under a grant of statutory immunity and is then prosecuted for any matter related to the compelled testimony, the government has the "heavy burden of proving that all of the evidence it proposes to use was derived from legitimate independent sources" and must not only negate any evidence of taint, but must also "prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony." *United States v. Warshak*, 631 F.3d 266, 293 (6th Cir. 2010). "*Kastigar* hearings" are held for the prosecution to prove this.

under Rule 12.2. Rather, the Second Circuit in *United States v. Stockwell*, 743 F.2d 123, 126 (2d Cir. 1984) addressed a similar argument and explained that because a defendant's statements made during a mental examination may be properly used at trial (i.e., for rebuttal), "it would be illogical to conclude that the conducting of such an examination gives a defendant an automatic right to a [*Kastigar*-type] hearing in which the government must demonstrate that it does not intend to misuse the information it has obtained."[13] Nevertheless, if before or during trial, Pennington has "specific evidence demonstrating taint," *Alderman v. United States*, 394 U.S. 165, 183 (1969), or of a violation of Rule 12.2(c)(4), then the Court will address those issues at that time, and the burden will be on the Government to prove that no statement made by Pennington while under examination, no expert testimony based on the statement, and no "fruits" or derivative use of any statements are being used for any improper purpose.

Lastly, Pennington requests that the Government's experts' examination be conducted in the same manner and under the same constraints as the defense experts' examination. As noted, *Davis* requires that the procedures and limitations of a court-ordered mental examination must be "reasonable" and decided on a "case by case" basis. *Davis*, 93 F.3d at 1293.  As the Tenth Circuit explained, "expert evidence relating to a mental disease, defect, or other condition, is extremely varied"  so a "case-by-case analysis" is necessary "to determine how extensive an examination is warranted in order for the government to fairly prepare for this evidence at trial." *United States v. Visinaiz*, 96 F. App'x 594, 599 (10th Cir. 2004). If the claimed mental condition

---

[13] However, the Second Circuit did note that "[i]t is not difficult to conceive of circumstances, not present here, where the government's conduct of the trial might raise a significant question as to whether it had improperly used information obtained in the psychiatric examination to develop evidence going beyond the issue of insanity," and in such a case it may be necessary to determine "whether a *Kastigar* -type hearing is necessary to investigate" the potential misuse. *Stockwell*, 743 F.2d at 127.

is "complex" then "a greater examination might be warranted," but for "minor conditions, a more limited examination would suffice." *Id.*

The Court finds that a mental examination conducted in the same manner and under the same constraints will be sufficient for the Government to adequately prepare a rebuttal to Pennington's evidence. *United States v. McSherry*, 226 F.3d 153, 157 (2d Cir. 2000) (explaining a court-ordered exam was "reasonable" because it "afforded the government no more than rough parity in terms of access to the information that would allow the government's experts to arrive at competing conclusions" to those of the defense experts.); *United States v. Williams*, 731 F. Supp. 2d 1012, 1017 (D. Haw. 2010) (explaining defendant can be subjected to "a similar examination conducted on behalf of the prosecution . . . for the purpose of rebutting the defense.")

Pennington was examined by two experts for a total of five and a half hours. A psychiatrist examined him for two hours and a psychologist for three and a half hours, and both occurred over video-conference due to COVID-19 restrictions. Likewise, the Government may have a psychiatrist and/or a psychologist examine Pennington for a total of five and a half hours. Any mental examinations must be outpatient and conducted over video-conference. ***All examinations must be audio and video-recorded and copies of the recording(s) sent to defense counsel within 5 days of the conclusion of the examination and filed under seal with the Court, available to the Court and defense counsel only***. No attorney for the Government will be permitted to view the recordings and may not be present during any examination.

Further, the Sixth Amendment "requires that defense counsel be informed of the 'nature and scope' of the evaluation" and that a defendant have the opportunity to discuss with his counsel the examination before it takes place. *United States v. Thompson*, 462 F. App'x 561, 564

15

(6th Cir. 2012); *Buchanan*, 483 U.S. at 424–25. Accordingly, the Government must notify defense counsel at least 10 days before the scheduled examination(s) of the following: 1) the date and time of the scheduled examination; 2) what type(s) of expert(s) will examine Pennington; 3) what tests or procedures will be conducted; and 4) the expected length of the examination(s) (not to exceed five and one-half hours).

**IT IS ORDERED** that the Government's Motion for Psychiatric and Psychologist Examinations [**R. 377**] is **GRANTED** in accordance with the procedures outlined in this Order.

This the 11th day of June, 2021.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY